UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CROWELL

    Plaintiff,                         Civil Action No. 15-14062
                                         Honorable Stephen J. Murphy, III
            v.                        Magistrate Judge Elizabeth A. Stafford

KIM FARRIS, CORIZON
HEALTH, INC., and EUTRILLA
TAYLOR,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 48]**

**I.    INTRODUCTION**

Plaintiff Richard Crowell filed a complaint against defendants Grievance Counselor Eutrilla Taylor, Physician Assistant (PA) Kim Farris, and Corizon Health, Inc., alleging continuing indifference to his medical needs while incarcerated at the Macomb Correctional Facility (MRF) in New Haven, Michigan. [ECF No. 1]. The Court dismissed Crowell's claims against Taylor and Corizon *sua sponte* for failure to state a claim. [ECF No. 41]. The remaining defendant, Farris, now moves for summary judgment. [ECF No. 48]. For the reasons set forth below, her motion should be **GRANTED**.

## II. ANALYSIS

### A.

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986);

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**B.**

Crowell seeks relief under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights. [ECF No. 1, PageID 3-5]. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the

plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly disregard[ed]" a substantial risk of serious harm. *Id.* at 836.

## C.

Crowell alleges that he suffers from sleep apnea, delayed sleep syndrome, restless leg syndrome, spinal stenosis, degenerative disc disease, osteoarthritis, bone spurring, gastroesophageal reflux disease ("G.E.R.D."), irritable bowel syndrome ("I.B.S."), painful masses or tumors, edema, and pain in the heel of his left foot. [ECF No. 1, PgID 5, 8]. He accuses Farris of replacing his effective I.B.S. treatment with an ineffective treatment of cold cereal; only treating his spinal stenosis and heel pain with an accommodation allowing him to purchase his own gym shoes, which he cannot afford; placing false information in his medical record stating that he is not in pain; and refusing to provide any other treatment for his ailments. [*Id.*].

4

Farris contends that Crowell's claims amount to no more than disagreements with his course of treatment, which alone does not constitute deliberate indifference. *See Mayfield v. Miles*, No. 13-10341, 2015 WL 736421, at *3 (E.D. Mich. Feb. 20, 2015), *aff'd* (Dec. 21, 2015); *Comstock*, 273 F.3d at 703. "Differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim." *Smith v. Sator*, 102 F.App'x 907, 909 (6th Cir. 2004). And Crowell is not entitled to receive a course of treatment simply because he has received that treatment in the past. *White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004). Farris has filed sworn affidavits from herself and Crowell's treating doctor, Badawi Abdellatif, M.D., to support her contentions. [ECF No. 48-2, 48-3].

According to Dr. Abdellatif, Crowell was transferred to MRF in December 2014. [ECF No. 48-3, PageID 374]. His active medications were one to two 325 mg acetaminophen (Tylenol) tablets three times per day as needed for pain, 30 ml of magnesium hydroxide (Milk of Magnesia) for constipation, 20 mg of pantoprazole sodium (Protonix) daily as needed for GERD, and 50 mg of tramadol HCL (Ultram), crushed, twice per day for chronic pain. [*Id.*]. Due to its addictive nature, the Ultram had to be approved by the Michigan Department of Corrections' Pain Management

5

Committee (PMC), and was approved in June 2014. [*Id.*, PageID 374-75]. Crowell also had special accommodations for his ailments, including a cotton blanket, glasses, 24-hour power, no work assignment, and a continuous positive airway pressure machine (CPAP) for sleep apnea. [*Id.*, PageID 375].

Farris first saw Crowell in May 2015. [ECF No. 48-2, PageID 360; ECF No. 48-3, PageID 393]. At that time, Crowell requested fiber cereal to help with his I.B.S. symptoms, saying that he could not afford to purchase Metamucil from the prison store. [ECF No. 48-2, PageID 360; ECF No. 50-1, PageID 436]. However, Farris indicates in her declaration that the MDOC provides funds for indigents to purchase healthcare items, including Metamucil, but Crowell refused to follow through with the process for receiving those funds. [ECF No. 48-2, PageID 359-60, 366, 369]. In June, after complaining of his care under Dr. Abdellatif, Crowell was transferred to Farris for all of his health care needs. [ECF No. 48-2, PageID 360-61]. In July, Farris noted in Crowell's medical chart that he had refused the Protonix medication used to treat his GERD, and that Dr. Abdellatif had observed Crowell laughing with other inmates and moving freely, indicating to her that Crowell was not functionally impaired by his pain and that his current pain management plan was effective. [*Id.*, PageID 361; ECF No.

6

50-1, PageID 444].

On the same day Crowell was observed with other inmates, he was seen by Farris and requested his Ultram prescription to be increased from twice per day to four or six times per day, explaining that his pain was better controlled by taking the medication every four hours. [ECF No. 48-2, PageID 361]. Farris noted that Crowell's spinal symptoms did not include "worrisome symptoms such as radiation, numbness, or tingling of his extremities," that he was performing activities of daily living without incident, and that his testing was largely negative, though his subjective complaints of pain were high. [*Id.*, PageID 361-62]. Farris also assessed Crowell's heel pain, finding no bruising, crepitus (joint grinding), decreased mobility, night pain, or swelling, but noting some tenderness and subjective reports of pain rated at a five or six out of ten. [*Id.*, PageID 362]. She did not recommend an increase in Ultram dosage to the PMC, but she scheduled Crowell for x-rays of the left heel to rule out any trauma, and advised him to use over the counter medication for any "breakthrough pain." [*Id.*]. She found that Crowell functioned well on his current pain management plan. [*Id.*, PageID 363].

Later in July, Crowell complained of "perpetual unrelenting pain due to" his conditions, and in August he complained that Tylenol was not

included in the medication request to the PMC. [*Id.*, PageID 363-64]. But according to Farris, she resubmitted the request to the PMC on the same day to include Tylenol after being advised that his prescription had lapsed. [*Id.*, PageID 363]. Crowell's left heel x-rays came back showing no evidence of trauma or fracture to the heel. [*Id.*; ECF No. 50-1, PageID 450]. In August, Crowell sought a single cell accommodation or to select his own bunkmate due to his sleep apnea, delayed sleep syndrome, and restless leg syndrome. [ECF No. 48-2, PageID 364; ECF No. 50-1, PageID 465]. Due to his ongoing CPAP treatment for sleep apnea and the lack of observed impact on his health due to these ailments, his request was denied. [*Id.*]. A few days later, Crowell met with Farris and again requested an increased dosage of Ultram. [ECF No. 48-2, PageID 364-65; ECF No. 50-1, PageID 468]. Upon examination, Farris found Crowell to be in no apparent distress, to be performing his activities of daily living without incident, and to have normal flexion and rotation of the spine, negative straight leg tests, and no muscle weakness, atrophy, or swelling. [*Id.*]. She did note to email the doctor about having Tylenol 325 tablets prescribed. [ECF No. 48-2, PageID 365].

In late August, Crowell kited that he believed Farris had put him through a "mock physical exam," falsifying his range of motion results and

8

refusing to treat his left heel pain, GERD, I.B.S., painful tumor, and sleep deprivation. [ECF No. 50-1, PageID 471]. Farris denies these allegations, noting that other providers had made similar findings. [ECF No. 48-2, PageID 365, citing ECF No. 50-1, PageID 519]. Crowell was seen later in August by other nurses for his heel pain and constipation. [ECF No. 48-2, PageID 365-66]. He complained that the constipation had been ongoing since 2011 when he was taken off of Metamucil and Nexium, and that he had stopped taking Protonix because it was not helping. [*Id.*, PageID 366]. He stated that he needed Nexium and Metamucil renewed, but Farris notes that Metamucil can be purchased from the prison store with funds offered to indigent patients solely for that purpose. [*Id.*].

In September, the PMC issued Crowell a new pain management plan, keeping his Ultram dosage the same, prescribing Tylenol, and recommending self-massage, heat, range of motion and stretching exercises, and walking twenty to forty minutes twice per day. [*Id.*; ECF No. 50-1, PageID 453]. Farris opines that this approach was appropriate to manage Crowell's back pain. [ECF No. 48-2, PageID 366]. She saw Crowell the same day the pain management plan was updated, finding that his GERD symptoms were unchanging, that he had tenderness in his left heel and a limp, but no bruising, crepitus, locking, or swelling, and that he

9

was not in any apparent stress. [*Id.*, PageID 366-67]. Later that month, Crowell engaged in episodes of self-injurious behavior due to mental health issues, but was ambulatory with a steady gait upon examination, which Farris opines "is not expected for a patient with back pain that he assesses as eight or nine out of ten." [ECF No. 48-2, PageID 368; ECF No. 50-1, PageID 486]. Crowell was transferred to a facility specializing in mental health issues, but returned to MRF in early October. [ECF No. 48-2, PageID 368-69].

In mid-October Crowell complained of severe GERD from a hiatal hernia, reporting that he had not had a bowel movement for several days. [ECF No. 48-2, PageID 369; ECF No. 50-1, PageID 510]. In her declaration, Farris opines that the "lack of bowel movement was not necessarily abnormal considering he had been on a hunger strike" and, again, that he was able to purchase Metamucil and other health care items from the prison store as an indigent person. [ECF No. 48-2, PageID 369]. Later that month, Crowell refused to be seen by Dr. Abdellatif on multiple occasions. [*Id.*; ECF No. 50-1, PageID 512-13]. In early November, Crowell was evaluated by another nurse, reporting chest discomfort, burning in his chest and throat after eating and drinking, and that Protonix has not been helping, requesting Nexium instead. [ECF No. 48-2, PageID

369; ECF No. 50-1, PageID 514]. He also reported pain in his toes and left foot and heel, stating that Ultram was not helping, but he did not have an abnormal gait. [*Id.*]. Later that month, Crowell filed the instant suit and was transferred to another facility. [ECF No. 48-2, PageID 369; ECF No. 1].

The above facts, sworn to by Farris and supported by the medical record and Dr. Abdelatiff's affidavit, [ECF No. 48-3, PageID 393-99], are also largely uncontested by Crowell. Crowell claims, and Farris admits, that he was previously given a higher dosage of Ultram for his back and heel pain (and that the dosage was reduced before he came under the care of Farris), that he had previously been prescribed Metamucil and Nexium for his GERD instead of Protonix, and that he once had a single cell accommodation. All parties would agree that Crowell suffered from a sufficiently serious medical need during his imprisonment at MRF, given his litany of medical issues. But the medical record and affidavits refute Crowell's claim that Farris was deliberately indifferent to his medical needs. There is no evidence that Farris disregarded a substantial risk of serious harm and in fact the evidence suggests that Crowell's conditions remained stable and were not interfering with his activities of daily living throughout the course of his treatment. And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

11

federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw,* 358 F.3d 377, 385 (6th Cir. 2004). That reluctance is apt here.

Considering the Ultram in particular, the state has an interest in limiting the dosages of highly addictive medications. "Where the question is one of administering a highly addictive drug on a continuing basis in the prison setting, the prison staff should have some discretion. . ." *French v. Daviess Cty., Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010). Controlling the dosage, while supplementing the pain relief with over-the-counter drugs such as Tylenol, does not rise to the level of "unnecessary and wanton infliction of pain." Further, Crowell has not disputed that Metamucil was available in the prison store nor that he was provided funds for the purpose of obtaining over-the-counter medications.

Crowell asserts that Farris's motion includes "lies, deceit, subterfuge and duplicity," [ECF No. 53, PageID 528], but he has provided no evidence beyond his own statements in support. Crowell "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Such an affirmative showing has not been made, and for these reasons, Farris's motion for summary judgment should be granted.

## III. CONCLUSION

For the preceding reasons, the Court **RECOMMENDS** that Farris's motion for summary judgment [ECF No. 48] be **GRANTED**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: June 9, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 9, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
